IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD COLLINS, | ) |
|     Petitioner, | ) ) ) ) |
|   v. | ) Case 12 C 4444 ) ) |
| Michael P. Atchinson, Warden, | ) ) |
|     Respondent. | ) ) |

MEMORANDUM OPINION AND ORDER

On August 24, 2005, petitioner Bernard Collins was convicted of first-degree murder. The trial court sentenced him to 45 years' imprisonment. Petitioner challenged his conviction without success in both direct appeals and post-conviction proceedings in the Illinois state courts. Petitioner, proceeding *pro se*, now seeks a writ of habeas corpus based on the following five claims: (1) that the police extracted a confession from him prior to issuing *Miranda* warnings in violation of the Fifth and Fourteenth amendments to the U.S. Constitution; (2) that his trial counsel's failure to cite *Missouri v. Seibert*, 542 U.S. 600 (2004), during his suppression hearing amounted to ineffective assistance of counsel; (3) that his appellate counsel was ineffective for not claiming that petitioner's Fifth and

Fourteenth Amendment rights were violated during his custodial interrogation; (4) that his postconviction counsel failed to provide effective assistance when it misrepresented petitioner's arguments in the postconviction petition; and (5) that the prosecutor violated his due process rights by misconstruing petitioner's claims in the state's motion to dismiss his postconviction petition. For the reasons stated below, I deny his petition and decline to issue a certificate of appealability.

I.

The following facts are taken from the Illinois Appellate Court's Rule 23 Order affirming petitioner's conviction and sentence on direct appeal, *People v. Collins*, No. 03-CF-2013, (Ill.App.Ct. March 29, 2007), Resp. Ans. [#11] at Ex. A. (*Collins I*), that court's summary order affirming the motion to dismiss petitioner's postconviction petition, *People v. Collins,* No. 03-CF-2013, (Ill.App.Ct. Jun. 28, 2011), Resp. Ans. [#11] at Ex. F (*Collins II*), and the transcript of petitioner's trial, Resp. Ans. [#11] at Ex. N.

On September 27, 2003, petitioner showed up at the residence of Ms. Collins, his wife of more than eight years from whom he has been separated for six months. Petitioner, distraught about Ms. Collins' relationship with another man, began questioning Ms. Collins about that relationship from the front steps. Ms.

Collins asked petitioner to leave. When he refused, Ms. Collins went outside to talk to him. After ten minutes, Ms. Collins asked her son who was in the house to call the police. Shortly thereafter, petitioner pulled out a gun and shot Ms. Collins nine times.

In his post-arrest interrogation with police officers, petitioner twice confessed to the murder; the first confession was not videotaped, but the second one was. Petitioner moved to suppress statements he made during the first half of his custodial interrogation, claiming that he was not warned of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). At the pretrial hearing, however, two officers testified that they had given petitioner his *Miranda* warnings before any questioning took place, and the trial court credited their version of events and denied the motion to suppress.

At trial, petitioner testified on his own behalf. Of the incident, he claimed that he "felt like he was 'watching [himself] do it and [he] couldn't stop.'" *Collins I*, at 9. Ms. Collins' son also testified that he saw petitioner pull the trigger and kill his mother. Ms. Collins' housemate at the time of the murder also testified that she saw petitioner and Ms. Collins arguing and that at Ms. Collins' request, she called 911 right before the first shot. A neighbor also testified that she saw petitioner "walking away [from the scene] with a gun in his

3

hand," and "saw him put it in his jacket pocket." Resp. Ans. [#11] at Ex. N at 454. A police officer also testified that she found "a revolver in [petitioner's] coat pocket " when she arrested him. *Id.* at 470.

Following deliberations, the jury found petitioner guilty of first degree murder, and the trial court sentenced him to 45 years' imprisonment.

## II.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state prisoner habeas relief unless the decision of the highest state court to adjudicate petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Under AEDPA, a petitioner is also required to exhaust the remedies available to him in state court prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b). This provision requires the petitioner to raise his claims "through one complete round of state-court review, either on direct appeal of his conviction or

in post conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

### Pre-*Miranda* Confession

Petitioner argues that his interrogation proceeded in two stages, but that he was given *Miranda* warnings only at the commencement of the second stage, after he had already made incriminating statements during the first stage. Petitioner urges that statements amounting to a confession of the murder should have been suppressed because they were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), since the police officers only issued the *Miranda* warnings *after* he had given a confession.

Respondent argues that this claim has not been presented for a full round of state court review, and thus having failed to "apprise the state courts that he intended to pursue it independently of his ineffective-assistance claims," petitioner has now procedurally defaulted it. Resp. Ans. [#11] at 17.

Respondent is correct that "[b]efore seeking a writ of habeas corpus in federal court, a petitioner must first exhaust the remedies available to him in state court." *Perroquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (explaining that "[e]xhaustion serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights."); *see also*

5

*White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009) ("A federal constitutional claim is procedurally barred if a petitioner fails to fairly present that claim in one complete round of state court review."). However, the Seventh Circuit has stated that where a constitutional challenge is embedded in an ineffective assistance of counsel claim, the underlying claim may be fairly presented to the state courts. *See McGee v. Bartow*, 593 F.3d 556, 567 n.9 (7th Cir. 2010) (reviewing petitioner's claim that his due process rights were challenged, even though that claim was embedded in his ineffective assistance of counsel claims). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (internal citations omitted). A claim is fairly presented so long as "both the operative facts and controlling law" is "put before the state courts." *Id.* The four factors that courts consider in determining whether a habeas petitioner has fairly presented his federal claim to the state court include: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a

6

pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 815.

Here, even though petitioner presented this claim as part of his ineffective assistance of counsel claims, the Illinois Appellate court had before it both the operative facts and the controlling law to evaluate whether petitioner's Fifth and Fourteenth Amendment rights were violated during his custodial interrogation. Specifically, the Illinois Appellate Court considered petitioner's contention that his confession was "obtained through a two-stage process whereby a confession was obtained in violation of *Miranda* and then repeated after *Miranda* warnings." *Collins II*, at 4, Resp. Ans. [#11] at Ex.F at 4. Before the Illinois state courts, petitioner argued that the facts of his case were similar to those of *Seibert v. Missouri*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). In *Seibert,* the issue "was the admissibility of a confession obtained by the use of a two-step interrogation strategy that called for the deliberate withholding of *Miranda* warnings until the suspect confessed, followed by a *Miranda* warning and a repetition of the confession already given." *United States v. Stewart*, 388 F.3d 1079, 1086 (7th Cir. 2004). In *Seibert,* a plurality of the Supreme Court ultimately held that *Miranda* warnings given mid-interrogation, after defendant gives an unwarned confession, are ineffective, and thus any subsequent

7

confession is inadmissible. *Seibert*, 542 U.S. at 617; 124 S.Ct. at 2613. By arguing that his confession should have been suppressed based on its factual similarity to *Seibert*, petitioner engaged a Constitutional analysis of his claim and fairly presented the issue to the Illinois state courts. *See Anderson*, 471 F.3d at 815 (noting that so long as "the state courts [are] apprised of the constitutional nature of the claim," it has been fairly presented).

To succeed on this claim, it is not precisely clear what Petitioner must show, because the *Seibert* decision failed to produce a majority opinion, and the Seventh Circuit continues to "discern exactly what the decision requires." *United States v. Heron*, 564 F.3d 879, 884 (7th Cir. 2009). The Seventh Circuit has stated that the Supreme Court's plurality opinion "resulted in two potential tests for evaluating"[1] the "question first, warn later" approach, but the Seventh Circuit has "yet to determine which tests governs in this circuit." *United States v. Johnson*, 680 F.3d 966, 978-79 (7th Cir. 2012).

Here, the Illinois Appellate Court had no need to determine which test to apply because it found that there was no prewarning

---

[1] "Under the plurality's test, the court determines whether a two-step interrogation procedure's 'mid-stream recitation of warnings after interrogation and unwarned confession' is effective enough to accomplish the purposes of *Miranda*." *Johnson*, 680 F.3d at 979 n.5 (quoting *Seibert*, 542 U.S. at 604). "The second test, from Justice Kennedy's concurrence, looks to an interrogator's intent in using a deliberate two-step interrogation procedure." *Id*. "If this deliberate procedure is used, 'postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." *Id*.

8

custodial interrogation. *See Johnson*, 690 F.3d at 979 ("[Petitioner's] case fails to satisfy either *Seibert* test because he has not shown the existence of a prewarning custodial interrogation."). The Illinois Appellate Court reviewed the record and found that "the trial court expressly found that the police officers who interviewed defendant were credible when they testified that *Miranda* warnings were properly administered before *any* questioning took place." *Collins II*, at 4 (emphasis in original). That determination was not unreasonable, given that the trial court was in the best position to assess the credibility of the officers. Moreover, I "presume that determination to be correct unless [petitioner] can rebut it with clear and convincing evidence to the contrary." *Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002); *see also* 28 U.S.C. § 2254 (e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). This deference to the state court's determinations of fact "stands to reason, in light of the long-held principle of jurisprudence that the trial judge is in the best position to judge the credibility of witnesses," and is also "mandated by Congress under AEDPA." *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003) (internal citations omitted).

Petitioner argues that the Illinois Appellate Court's determination was unreasonable because he urges that "before giving *Miranda* warnings, this petitioner was questioned first." Pet. [#22] at 6. His claim, however, is supported only by his self-serving testimony, which the trial court rejected in favor of the officers' testimony that no questioning took place prior to petitioner receiving his *Miranda* rights. He has failed to come forth with clear and convincing evidence that his version of events should be credited. Thus, Illinois Appellate Court's determination of the facts was reasonable given the trial court's determination that the officers' testimony that they gave petitioner his *Miranda* warnings in advance of any questioning was credible.

**Ineffective Assistance of Trial Counsel**

To succeed on his claim that his trial counsel was ineffective, petitioner must surmount "the familiar two-prong standard set forth in the leading case, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Harris v. Thompson*, 698 F.3d 609, 639 (7th Cir. 2012). That is, he must show that his "counsel's performance was deficient because it fell below an objective standard of reasonableness," and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal citations omitted). Petitioner claims that his trial counsel was

10

constitutionally ineffective because he failed to cite *Missouri v. Seibert*, 542 U.S. 600 (2004), during the pre-trial hearing to suppress statements that petitioner claimed he made while in state custody, but before being issued his *Miranda* warnings. As discussed above, in *Seibert*, the U.S. Supreme Court held that "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until the interrogation has produced a confession," fails to "comply with *Miranda's* constitutional requirements," and any "statement repeated after a warning in such circumstances is inadmissible." *Missouri v. Seibert*, 542 U.S. 600, 604, 124 S.Ct. 2601, 2605 (2004). Petitioner argues that had his trial counsel supported his suppression arguments with citations to *Seibert,* his incriminating statements would not have been introduced into evidence. Pet. Br. [#1] at 14. He urges that counsel's failure to support his legal arguments during the suppression hearing with this Supreme Court precedent was unreasonable in light of the prevailing professional standards.

    In denying this claim, the Illinois Appellate Court correctly cited *Strickland* as the governing Supreme Court standard, and acknowledged that petitioner was required to show both that his counsel's performance "fell below an objective standard of reasonableness and that the deficient performance was prejudicial in that there is a reasonable probability that, but

11

for counsel's unprofessional errors, the results of the proceeding would have been different." *People v. Collins*, No. 2-10-0080(Ill.App.Ct. Jun. 28, 2011), at Ex. F to Resp. Ans. [#12] at 4 (*Collins II*). After identifying the correct standard, the Illinois Appellate Court analyzed the trial court record and focused on the fact that "the trial court expressly found that the police officers who interviewed the defendant were credible when they testified that *Miranda* warnings were properly administered before *any* questioning took place." *Id.* (emphasis in original). The Appellate Court found that, given the trial court's credibility determinations, "there is no reasonable probability that an argument founded on *Siebert*[sic] would have succeeded either at trial or on appeal." *Id.* at 4-5. Because the court found that petitioner suffered no prejudice from counsel's failure to cite *Seibert* in its suppression motion, it declined to analyze the first prong of *Strickland. Id.* at 5.

Petitioner argues that the Illinois Appellate Court's decision was an unreasonable application of *Strickland's* formulation of prejudice. He urges that "*Strickland's* prejudice prong does not require counsel's actions to had[sic] 'made a difference.'" Pet. Resp. [#22] at 4. According to him, "all he has to show is 'a reasonable probability' that, but for counsel's unprofessional errors, the outcome of the trial would have been different." *Id.* Petitioner appears to argue that the prejudice

12

standard applied by the Illinois Appellate Court was erroneous because it held him to a higher standard than *Strickland* requires: "to show a 'reasonable probability of a different outcome' is a less demanding burden that[sic] to show the outcome would have been different." *Id.* (citing *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006)). While Petitioner's distinction is correct, the Illinois Appellate Court recited the correct standard in its conclusion. It held that there was "no reasonable probability that an argument founded on *Seibert* would have succeeded at trial or on appeal." *Collins II,* at 4-5. That is a correct formulation of *Strickland*, and given the overwhelming amount of evidence produced at trial of petitioner's guilt, including his own testimony and that of the eyewitnesses, I cannot say that the Illinois Appellate Court incorrectly applied *Strickland* to this claim.

**Ineffective Assistance of Appellate Counsel**

Petitioner also argues that appellate counsel was constitutionally deficient because of his failure to argue on appeal that the interrogation procedure used by police officers violated petitioner's Constitutional rights. As with a claim of ineffectiveness of trial counsel, "[t]he *Strickland* standard also governs a claim for ineffective assistance of appellate counsel." *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013). As above, I must review both the alleged unreasonable conduct and the

13

prejudice as the result of counsel's errors. *Id.* In evaluating this claim, I must keep in mind that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (internal citations omitted). Finally, I note that "it is possible, albeit difficult, to show that counsel's failure to raise a particular claim amounted to ineffective assistance." *Id.* (noting that the reviewing court will not second-guess "informed strategic choices").

The Illinois Appellate Court correctly identified the two-pronged standard of *Strickland*. As above, it analyzed appellate counsel's failure to raise this claim and found that there was no prejudice from that failure, because the trial court credited the testimony of the interrogating officers who said that petitioner was given his *Miranda* rights prior to giving his incriminating statements. *Collins II* at 4. Thus, there was "no reasonable probability" that arguing that petitioner's case was analogous to *Seibert* would have succeeded on appeal, and the Illinois Appellate Court found that petitioner suffered no prejudice on appeal.

Petitioner argues that the Illinois Appellate Court's decision was an unreasonable application of *Strickland*, where, as here, a petitioner claims that appellate counsel failed to raise a viable claim. Pet. Resp. Br. [#22] at 15. He argues that it

14

was an error of constitutional magnitude for counsel to decline to pursue this claim. However, I cannot say it was not a matter of strategic choice for appellate counsel to pursue the argument that petitioner was entitled to a conviction on second-degree murder and to forego the claim that law enforcement extracted a confession from him before reciting his *Miranda* rights. Given the trial court's assessment of the interrogating officers' credibility and the damaging eyewitness testimony against petitioner, it is unlikely that but for counsel's failure to raise this claim, there was "a reasonable probability that the outcome would be different." *See Stanley*, 465 F.3d at 813.

**Unreasonable Level of Assistance By Postconviction Counsel**

Petitioner also argues that his postconviction counsel provided him with an "unreasonable level of assistance." Pet. [#1] at 6. Specifically, he claims that postconviction counsel, "when seeking to withdraw from petitioner's case[,] deliberately misrepresented the claims in petitioners[sic] post conviction petition." *Id.* This claim, however, is barred by 28 U.S.C. § 2254(i), which provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *Cannon v. U.S.*, 326 Fed.Appx. 393, 395 (7th Cir. 2009) ("Prisoners do not have a constitutional right to counsel in prosecuting a collateral

15

attack, and so the shortcomings of the lawyers at this stage fall on the prisoner himself rather than being imputed to the state.").

**Prosecutorial Misrepresentation**

Finally, Petitioner argues that the state prosecutor made material misstatements in his motion to dismiss petitioner's *pro se* postconviction petition. To support this claim, however, petitioner has not pointed to any deprivation of a federal, constitutional right. He cites no federal case law in support of his claim that a prosecutor's failure to accurately present petitioner's postconviction arguments in briefs amounts to the deprivation of a constitutional right, nor is this Court aware of any. Having failed to assert a cognizable federal right, petitioner is not entitled to habeas relief based on this claim. *Perroquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene."); *see also* 28 U.S.C. § 2254(d)(1) ("An application for a writ of habeas corpus ... shall not be granted ... unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States*.") Absent the allegation

16

of a deprivation of a federal, constitutional right, I am compelled to deny this claim.

### III.

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied. For the same reasons, I conclude that petitioner has not made a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253© and decline to issue a certificate of appealability.

**ENTER ORDER:**

**Dated**: January 16, 2014

**Elaine E. Bucklo**
United States District Judge

17